IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **CHARLES DUFF**, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 3:22-cv-00305 ) ) Judge Michael J. Newman ) Magistrate Judge Caroline H. Gentry |
| v. | ) ) |
| **DAYTON OSTEOPATHIC HOSPITAL**, | ) **JOINT MOTION FOR FAIR LABOR** ) **STANDARDS ACT SETTLEMENT** ) **APPROVAL AND DISMISSAL** |
| Defendant. | ) |

## I.  INTRODUCTION

Plaintiff Charles Duff ("Plaintiff") and Defendant Dayton Osteopathic Hospital ("Defendant") (collectively, the "Parties") respectfully move this Court to approve the proposed Fair Labor Standards Act ("FLSA") settlement reached by the Parties (the "Settlement"), as outlined in the Joint Stipulation of Settlement and Release (the "Agreement"), a copy of which is attached as **Exhibit 1,** along with its Exhibits A and B. The proposed Settlement resolves bona fide disputes involving unpaid wages, including overtime compensation, under the FLSA, 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111, and Ohio Rev. Code 4113.15.

Plaintiff filed this action as a collective action under the FLSA and as an Ohio class action under Fed. R. Civ. P. 23 whereby he alleged Defendant failed to pay him and others similarly situated for certain compensable donning and doffing time, which he alleged resulted in underpayment of overtime and failure to pay wages on a semi-monthly basis. (Agreement at ¶A). For settlement purposes only, the Parties agree that Plaintiff and the other Eligible Settlement Participants are similarly situated for purposes of 29 U.S.C. §216(b) of the FLSA, and consent to Court-facilitated settlement notice. (*Id*. at ¶¶7, 29). Eligible Settlement Participants are a group of

**149** current and former hourly employees of Dayton Osteopathic Hospital who worked at the Kettering Health Washington Township or Kettering Health Dayton facilities, were required to put on or take off commercially laundered clothing at the beginning and end of each shift, and worked more than six, 40 or more hour workweeks at any time during the Release Period of October 28, 2020, through October 29, 2022. (*Id*. at ¶¶7, 20). Such individuals will have 60 days to properly complete, execute, and return a Claim Form to participate in Settlement ("Opt-In Party Plaintiffs"). (*Id*. at ¶¶3, 11, 52-53).

The Parties respectfully submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of Plaintiff and all other Opt-in Plaintiffs. (*Id*. at ¶F). The Parties further represent that the Settlement satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during good faith, arm's-length negotiations conducted by experienced counsel. (*Id*. at ¶D).

The Settlement documents submitted for approval and entry by the Court consist of the following: Joint Stipulation of Settlement and Release and its Exhibits A (Claim Form) and B (Notice of Settlement) (**Exhibit 1**); Declaration of Plaintiffs' Counsel Hans A. Nilges (**Exhibit 2**); and, Proposed Order Granting Approval of FLSA Settlement (**Exhibit 3**). The following sections explain the nature of the action, the negotiations, the principal terms of the Settlement and the propriety of approving the Settlement and the proposed distributions of Settlement proceeds.

II.   **FACTUAL AND PROCEDURAL BACKGROUND**

   A.   *The Action.*

On October 28, 2022, Plaintiff filed his original Complaint, asserting collective and class claims for unpaid overtime and untimely wages under the FLSA, 29 U.S.C. §§ 201-219, the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Chapter 4111, and Ohio Rev. Code 4113.15.

Specifically, Plaintiff alleged that Defendant failed to pay Plaintiff and others similarly situated for time spent donning and doffing commercially laundered clothing at work, which allegedly resulted in violations of the FLSA and Ohio law. (Doc. 1).

On December 19, 2022, Plaintiff filed an Amended Complaint, in which he replaced the originally named defendant, Kettering Adventist Healthcare d/b/a Kettering Healthcare Network, with the presently named Defendant Dayton Osteopathic Hospital. (Doc. 9). On January 11, 2023, Defendant filed its Answer, denying all liability. (Doc. 15).

On or about July 25, 2023, the Parties agreed to the Settlement, the terms of which are encompassed in the attached Agreement. Court approval of the Settlement will result in a Release of Claims (as defined in the Agreement) and in dismissal of the Action with prejudice.

      **B.**    ***Negotiation of the Settlement.***

The Parties engaged in good faith, arms' length negotiations early on in the litigation. Counsel for both sides, investigated the facts relating to the claims alleged in the Action. The Parties engaged in extensive factual and legal discussion and correspondence regarding Plaintiff's legal theories, the propriety of collective action treatment, and Defendant's defenses. (Agreement at ¶F; Nilges Dec. at ¶9).

As part of the negotiations, Defendant provided Plaintiffs' Counsel time and pay data for the putative collective/class. Plaintiffs' Counsel analyzed the documents provided by Defendant and engaged a PhD-level data scientist (the "Data Scientist") to review the timekeeping and pay records to calculate the alleged unpaid overtime. The Data Scientist's model, which included toggles to manually enter/adjust estimated unpaid minutes worked per shift, was analyzed and revised pursuant to negotiation discussions. The model was shared with Defendant's Counsel and served as a basis for negotiations. Plaintiffs' Counsel also continually conferred with Plaintiff

3

throughout the process, including assessing Defendant's various allegations and defenses. (Nilges Dec. at ¶10).

Plaintiffs' Counsel and Plaintiff have concluded the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiff and all Opt-In Party Plaintiffs because: (1) there are numerous disputed issues of fact and law relating to the claims sought to be asserted in the Action, including the scope of the Action; (2) there will be considerable expense and time necessary to prosecute the Action through trial, as well as risks, uncertainty, and costs of further prosecution; (3) for purposes of liability, it is a possibility that Plaintiff may not be able to maintain the Action as a collective action under the FLSA or as a class action under Fed. R. Civ. 23; (4) there will be uncertainties of complex litigation; and (5) the relative benefits conferred upon Plaintiff and the Opt-In Party Plaintiffs under this Agreement are substantial. (Agreement at ¶F; Nilges Dec. at ¶11). The Parties discussed possible mediation but were successful in their shared objective in resolving the matter without unnecessarily expending the time and resources for mediation. (Agreement at ¶D).

C.  *The Settlement Terms.*

If approved by the Court, the Settlement will cover Plaintiff and all Opt-In Party Plaintiffs. (Ex. 1). The Global Settlement Fund of **$200,000.00** is the total amount of funds available for the following: (1) Individual Settlement Awards; (2) the Service Award; (3) Plaintiffs' Counsel's attorney fees and costs; and (4) Settlement Administrator Costs. The Global Settlement Fund does not include Defendant's share of the applicable employer tax withholdings. (*Id*. at ¶6).

The total settlement amount represents approximately 5 minutes of alleged unpaid time per shift, for 100% of the alleged unpaid overtime, plus approximately 80% liquidated damages. Assuming 100% participation, the approximate Net Settlement Fund divided by 149 Eligible

4

Settlement Participants would result in an average payment that exceeds approximately $808 per individual. (Nilges Dec. at ¶12).

1. **Settlement Notice.**

As provided in the Agreement, each of the Eligible Settlement Participants shall have 60 days from the date Notice of Settlement is initially mailed (but if any mailed Notice of Settlement is returned as undeliverable, the Eligible Settlement Participant shall have 30 days from any re-mailing of the Notice of Settlement) to submit a Claim Form. (Agreement at ¶¶3, 45).

2. **Allocation of the Settlement Fund.**

The amount approved by the Court for Plaintiff's Service Award, Plaintiffs' Counsel's attorneys' fees and costs, and settlement administration costs shall be deducted from the Global Settlement Fund to obtain a "Net Settlement Fund." (*Id*. at ¶10). The Net Settlement Fund will be distributed to Opt-In Party Plaintiffs, as calculated by the Settlement Administrator using the formula set forth in the Agreement. (*Id*. at ¶38).

3. **Service Award.**

If approved by the Court, a Service Award of **$5,000.00** will be deducted from the Global Settlement Fund and paid to Plaintiff for commencing the claims represented in this Action, in helping to bring about this favorable collective outcome, and in exchange for a general release of claims. Defendant agrees this amount is reasonable and does not oppose the requested Service Award. (*Id*. at ¶32).

4. **Attorneys' Fees and Costs.**

If approved by the Court, **$66,666.67**, which represents one-third of the Global Settlement Fund, shall be distributed to Plaintiffs' Counsel as attorneys' fees. Settlement also includes reimbursement of Plaintiffs' Counsel's costs incurred in pursuing the Action, which presently total

5

approximately **$1,322.68**. Plaintiffs' Counsel will not receive any fees incurred in effectuating notice and settlement, including fielding inquiries from Eligible Settlement Participants and working with the Settlement Administrator. (Nilges Dec. at ¶16). Defendant agrees that this request is reasonable and does not oppose it. (Agreement at ¶43).

In exchange for payment and subject to Court approval, the Action will be dismissed with prejudice. (*Id*. at ¶E). Attached as Exhibits A and B to the Agreement are the proposed Claim Form and Notice of Settlement, informing Eligible Settlement Participants of the Settlement and providing them the means to join the Action. (*Id*. at ¶¶3, 11, 21-23). The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant. (*Id*. at ¶¶47, 52). The Opt-In Party Plaintiffs will participate in the Settlement and their claims will be released as defined in the Agreement and Notice of Settlement. (*Id.* at Agreement at ¶¶H, 7, 19-21).

### III. THE COURT SHOULD APPROVE THE FLSA CLASS MEMBERS' SETTLEMENT

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As shown in the attached Declaration of Hans A. Nilges, and as explained below, the Court should approve the Settlement.

#### A. *The Seven-Factor Standard Is Satisfied*.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1, n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982)). As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action

6

settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*See e.g.*, *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *6 (S.D. Ohio Sep. 20, 2019) (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14; and *Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

"The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *6 (citing *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14 (internal quotations and further citations omitted). Application of the factors to this Settlement supports approval.

### 1. No Indicia of Fraud or Collusion Exists.

Plaintiffs' Counsel and Defendant's Counsel have extensive experience litigating FLSA claims, including claims for unpaid overtime, and each were given the opportunity to assess the merits of the Parties' claims and defenses, as well as the potential damages at issue in this case. The Parties contested the issues early, and Defendant continues to deny any wrongdoing. (Doc. 15; Agreement at ¶¶C, 27; Nilges Dec. at ¶¶2-7, 9, 13).

Agreement was achieved only after arm's-length, good faith negotiations. (Agreement at ¶D; Nilges Dec. at ¶9). And notwithstanding settlement, the Parties continue to disagree as to

whether any wages are owed, whether there was an overtime violation under FLSA or Ohio law, whether a two- or three- year statute of limitations was applicable, whether liquidated damages are recoverable, and whether the matter could be maintained on a collective/class basis. (Agreement at ¶F; Nilges Dec. at ¶13). As such, there are no indicia of fraud or collusion.

      **2.    The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval of the Settlement.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling, which could result in no recovery for the class at all. By contrast, the Settlement promptly and efficiently provides substantial relief to Plaintiff and the Opt-In Party Plaintiffs and amplifies the benefits of that relief through the economies of class resolution. Settlement represents a successful resolution of the claims given that a trier of fact might conclude that the class is not entitled to any relief or to relief in an amount less than the amount agreed to in the Settlement, or that a court might not allow the claims to proceed collectively. It also provides immediate and substantial relief without the attendant risks and delay of continued litigation and appeals. (Nilges Dec. at ¶14).

      **3.    Investigation Was Sufficient to Allow the Parties to Act Intelligently.**

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement. Defendant produced wage and hour data for the Eligible Settlement Participants in the form of Excel spreadsheets. Plaintiffs' Counsel utilized the Data Scientist's damages model, which included toggles to manually enter/adjust estimated unpaid minutes worked per shift. The model served as a basis for negotiations. Plaintiffs' Counsel also continually conferred with

Plaintiff throughout the process, including assessing Defendant's various allegations and defenses. (Agreement at ¶7; Nilges Dec. at ¶¶9-10).

### 4. Given the Risks of Litigation, the Court Should Approve the Settlement.

Counsel for both sides believe in the merits of their clients' respective positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result. For example, expert time studies of alleged unpaid donning and offing could potentially cost upwards of $50,000. Moreover, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Continued litigation would be risky for all Parties. (Nilges Dec. at ¶9, 11, 13).

Plaintiff's range of possible recovery is also open to dispute. Even if Plaintiff were to succeed on the merits of his claims, which Defendant disputes, the amount of recovery is uncertain and something upon which the Parties continue to disagree. As an example, the Parties disagree about whether any wages are owed, whether there was an overtime violation under FLSA or Ohio law, whether a two- or three- year statute of limitations was applicable, whether liquidated damages are recoverable, and whether the matter could be maintained on a collective/class basis. (*Id*. at ¶13).

### 5. Experienced Counsel Recommend Court Approval.

Plaintiff obtained collective resolution with no opt-in plaintiffs. Yet, by entering into the collective Agreement, the Parties indicate their position that the Settlement fair, reasonable, adequate. (Agreement at ¶F).

Likewise, both Plaintiffs' and Defendant's Counsel have extensive experience in wage-and-hour collective and class actions, the Parties have acted in good faith, and Counsel have represented their clients' best interests in reaching the Settlement. (Agreement at ¶D; Nilges Dec.

at ¶9). Plaintiffs' Counsel and, by joining this Motion so too Defendant's Counsel, support the Settlement as fair, reasonable, adequate, and in the best interest of Plaintiff and the class as a whole, as described in the Declaration of Hans A. Nilges. (Agreement at ¶F; Nilges Dec. at ¶12).

### 6. Public Interest.

Public interest favors approval because the Settlement reflects a reasonable compromise over disputed issues, and results in prompt and adequate compensation to the Eligible Settlement Participants without the inherent risks and costs of litigation. Approval of this Settlement will encourage settlement of litigation generally.

### B. *The Settlement Distributions Are Fair, Reasonable, and Adequate.*

When scrutinizing an FLSA collective action settlement, "a court must ensure that the distribution of the Settlement proceeds is equitable." *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)). All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for the Plaintiff and Opt-In Party Plaintiffs.

### 1. The Payments to Class Members Are Reasonable and Adequate.

The Settlement confers substantial benefits upon Plaintiff and Opt-In Party Plaintiffs. For example, Defendant's Counsel produced wage and hour data for the Eligible Settlement Participants. Through analysis by Plaintiffs' Counsel and the Data Scientist, a damages model was developed, reflecting alleged unpaid overtime for the entire class. The model was shared, discussed, and adjusted throughout the process. (Nilges Dec. at ¶10).

The Settlement Administrator will calculate the Eligible Settlement Participant's respective *pro rata* share of the Net Settlement Fund using the formula set forth in the Agreement. (Agreement at ¶38).

The total settlement amount of $200,000.00 equals approximately 5 minutes of alleged unpaid time per shift, for 100% of the alleged unpaid overtime, plus 80% liquidated damages. Assuming 100% participation, settlement would result in an average payment in excess of approximately $808 per individual. Plaintiffs' Counsel believes that this recovery is not just fair and reasonable, it is exceptional. (Nilges Dec. at ¶12).

2. **Plaintiff's Service Award Is Proper and Reasonable.**

Plaintiff seeks a Service Award of **$5,000.00**. (Agreement at ¶24). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010)).

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

Here, not only was Plaintiff willing to shoulder the burden of being a named plaintiff in a

11

class and collective action lawsuit, but he also contributed significant time, effort, and detailed factual information, enabling Plaintiffs' Counsel to evaluate the strength of his case. Plaintiff was also available and provided valuable guidance as the Parties were negotiating settlement, and provided Plaintiffs' Counsel with the information needed to evaluate whether the proposed Settlement was in the best interest of Opt-In Party Plaintiffs. (Nilges Dec. at ¶15). As such, his time and efforts support the requested Service Award. Further, Plaintiff entered in a general release of claims in partial exchange for the Service Award. (Agreement at ¶¶23, 32-35). Notably, Defendant agrees this request is reasonable and does not oppose it. (*Id*. at ¶32).

### 3. The Attorneys' Fees to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of the Settlement are fair to Plaintiff and the Eligible Settlement Participants, it may review the Parties' Agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994).

An award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (S.D. Ohio Sep. 20, 2019) (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best

12

reflects FLSA's employee-protection objective." (citing *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021) (internal quotations omitted). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class," *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *Id*. Additionally, "[i]n determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]'" *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 618 (6th Cir. 2021).

This Court has approved one-third fee requests in numerous similar class actions and collective actions. *See e.g.*, *Campbell v. Wise Med. Staffing*, Case No. 2:18-CV-00493, 2020 U.S. Dist. LEXIS 253264, at *4 (S.D. Ohio Feb. 21, 2020) ("Court agrees and finds that one-third of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees"); *Adams et al. v. Frontier Railroad Services, LLC*, USD SD Ohio, Case No. 2:19-cv-00808 (Dkt. No. 43) ("The requested attorney's fees award, which is one-third of the common fund, is reasonable") (citing *Hebert*, 2019 WL 4574509, at *7–8); *Younge v. The Huntington National Bank*, SD Ohio, Case No. 2:18-cv-00314 (ECF No. 91) (same). "[A]n award of one-third of the settlement fund as a fee award…is a normal fee amount in a wage and hour case." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *14 (S.D. Ohio Nov. 25, 2019) (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10–11 (N.D. Ohio July 27, 2018)); *Hixon et al v. MPW Industrial Services, Inc.*, SD Ohio, Case

No. 2:20-cv-03361(Dkt. No. 39) ("The amount requested is typical for attorney's fees awarded in common fund, FLSA collective actions in this District"); *Perry v. DASCO Home Medical Equipment, Inc.*, SD Ohio, Case No. 2:19-cv-01921; Dkt. Nos. 10 and 11 (approving 1/3 early in litigation without mediation); *Mulledy v. American Air Furnace Company,* SD Ohio, Case No. 2:20-cv-05185 (1/3 fee approved in case where parties agreed to early mediation without motion practice and formal discovery); *Gammon, et al. v. Marietta OPCO, LLC d/b/a Arbors at Marietta*, SD Ohio, Case No. 2:19-cv-05140 (same); and *Green, et al. v. H.A.D., Inc.*, SD Ohio, Case No. 2:15-cv-933 (same).

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees and costs, and they we will not be compensated for any time spent effectuating notice and settlement, including fielding inquiries from Eligible Settlement Participants and working with the Settlement Administrator. (Nilges Dec. at ¶16). "In doing so, Plaintiffs' Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *19 (citation omitted). As this Court has recognized, "Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19.

Finally, courts in this Circuit acknowledge that "wage and hour class and collective actions, such as this, are inherently complex and time-consuming." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *10 (citation omitted). This case involved contested issues of whether Defendant's employees performed work for which they were not properly compensated and, if so, how much

14

of that time was compensable. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the Global Settlement Fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court Should Authorize Reimbursement of Expenses.

The Court should approve reimbursement of the expenses in this case. Plaintiffs' Counsel's current litigation costs are approximately **$1,322.68**. Costs incurred to date by Plaintiffs' Counsel include the following: investigation; Court filing fee and service; postage; and engagement of the Data Scientist to build a damages model. (Nilges Dec. at ¶17). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *20 (S.D. Ohio Nov. 25, 2019) (further citation omitted). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.*

These costs are reasonable and were incurred in the prosecution of Plaintiff's claims. Also, Defendant agrees that this request is reasonable and does not oppose it. (Agreement at ¶35). Therefore, the Court should award Plaintiffs' Counsel reimbursement of these costs and expenses from the Global Settlement Fund.

## IV. CONCLUSION

For the forgoing reasons, the Parties request that this Court enter the Order, attached hereto as **Exhibit 3**:

1. Approving the Parties' Agreement and its Exhibits A through C, attached hereto as **Exhibit 1**;

2. Approving the requested Service Award to Plaintiff Charles Duff;

3. Approving Plaintiffs' Counsel's requested attorneys' fees and costs;

4. Retaining jurisdiction over the Action to enforce the terms of the Agreement; and

5. Dismissing this matter with prejudice.

Respectfully submitted,

| **NILGES DRAHER LLC** | **EPSTEIN BECKER GREEN** |
|---|---|
| */s/ Hans A. Nilges* | */s/ Jill K. Bigler (with permission)* |
| Hans A. Nilges (0076017) | James G. Petrie (0059446) |
| Shannon M. Draher (0074304) | Jill K. Bigler (0083789) |
| 7034 Braucher Street NW, Suite B | Christopher T. Page McGinnis (0099165) |
| North Canton, OH 44720 | 250 West Street, Suite 300 |
| Telephone: (330) 470-4428 | Columbus, OH 43215 |
| Facsimile: (330) 754-1490 | Telephone: (614) 872-2500 |
| Email: hans@ohlaborlaw.com | Facsimile: (614) 633-1713 |
| sdraher@ohlaborlaw.com | Email: jpetrie@ebglaw.com |
| | jbigler@ebglaw.com |
| *Counsel for Plaintiffs* | ctpage@ebglaw.com |
| | *Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Hans A. Nilges*

*Counsel for Plaintiffs*